USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/25/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAYA EIDELMAN, on behalf of himself and others
similarly situated,

                      Plaintiff,

-against-

THE SUN PRODUCTS CORPORATION, COSTCO
WHOLESALE CORPORATION,

                      Defendants.

No. 16-cv-3914 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Shaya Eidelman brings this proposed class action against the Sun Products Corporation ("Sun Products") and the Costco Wholesale Corporation ("Costco") (collectively, "Defendants"), alleging violations of New York's General Business Law ("GBL") §§ 349 and 350, and alleging claims of negligent misrepresentation, unjust enrichment and injunctive relief. Before this Court is Defendants' motion to dismiss the Amended Complaint ("Am. Compl."). For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are derived from Plaintiff's Amended Complaint, (ECF No. 18), unless otherwise noted, and are accepted as true for the purposes of this motion.

Plaintiff alleges that on March 8, 2016, he entered Costco in Nanuet, New York, with the intention of purchasing liquid laundry detergent free from any irritant chemical ingredients, and recommended by dermatologists. (Am. Compl. ¶ 20.) Plaintiff viewed the labels on the various detergent bottles, including that of Defendant Sun Product's "237-fl oz. bottle of ALL PLUS + FREE CLEAR ... liquid detergent" (the "Product" or the "Detergent"). (Id.) Based upon this label, Plaintiff ultimately purchased the Detergent over other available liquid laundry detergents.

(*Id.* ¶ 20.) After Plaintiff used the product to launder his family's clothing, he discovered that the

Product was "in fact, not recommended by dermatologists with sensitive skin [and] … accordingly,

ceased using the product to launder his or his family's clothes." (*Id.* ¶ 22.)

The detergent bottle purchased by Plaintiff bore a label indicating that the Product was

"from the #1 Detergent Brand Recommended by Dermatologists for Sensitive Skin" (the "Label"),

with the words "from the" presented in an "excessively small" font size, as compared to the

remainder of the text, and the words "recommended by dermatologists" in bold. (*Id.*) Plaintiff

asserts that the phrase "from the" is a "barely readable prefix" that modifies the remaining, "more

prominently displayed, partly bolded, portion" of the text. (*Id.* ¶ 11.) As such, it is alleged that

the "variant display scheme presents the reasonable consumer with the misleading and incorrect

impression" that the Product itself is the "#1" detergent recommended by dermatologists for

sensitive skin (*id.* ¶ 11), when, "the detergent is not [in fact] recommended by dermatologists for

those with sensitive skin." (*Id.* ¶ 2.)

Furthermore, Plaintiff alleges that the "tiny and unbolded 'from the' disclaimer prefix"

fails to cure the misleading statement on the Label, because the reasonable consumer would

presume that if the Product is "from the #1" recommended brand for sensitive skin, this should

include the detergent contained in the labeled bottle. (*Id.* ¶ 13.) Along these lines, Plaintiff also

asserts that the Label is deceptive because it touts a dermatological recommendation without

clarifying which detergents within the brand have actually been recommended and reasonable

consumers, not stopping to analyze the Label or conduct research when purchasing a "low value

item" such as this one, would be "unprepared to distinguish between a recommendation intended

for the brand as opposed to the" actual detergent contained within the bottle bearing the Label.

(*Id.* ¶ 14.)

Plaintiff asserts that Defendant Sun Products allegedly knew that the Detergent was not the most recommended by dermatologist for sensitive skin and thus wrote the "from the" "disclaimer prefix" in "very small font," with the presumable intention of inducing consumers to purchase the Detergent. (*Id*. ¶¶ 14, 16.) In fact, Defendant allegedly manufactures a standard bottle for an alternate detergent which has a label that states that it is "#1 recommended by Dermatologist, Allergists [and] Pediatricians for Sensitive Skin," without the aforementioned "from the" qualifier. (*Id*. ¶ 17.) According to Plaintiff, this is likely because the alternate, standard bottle contains detergent that is in fact the most recommended by dermatologists for sensitive skin. (*Id*.) Thus, Plaintiff also asserts, presumably given the similarities between the bottles, at the time of product selection and purchase, consumers would be misled into believing that both detergents are the most highly recommended by dermatologists for those with sensitive skin types. (*Id*.) For these reasons, Plaintiff contends that the Product's label is intentionally, negligently, and/or recklessly deceptive in the conclusion it leads consumers to draw. (*Id*. ¶ 12.)

Plaintiff also alleges that the Detergent contains a "number of known skin irritants" (*id*. ¶ 18), but that the ingredients for the Detergent are not listed on the bottle, nor easily accessible online. (*Id*. ¶ 15.) As such, Plaintiff contends that it is unlikely consumers seeking to purchase detergents recommended by dermatologists for sensitive skin would have any reasonable way of knowing that the ingredients are irritating to sensitive skin, and not the "#1 recommended" by dermatologists for this skin type. (*Id*.)

Plaintiff alleges he and putative class members were ultimately "deceived and misled" into believing that the Product was recommended by dermatologists, and that the deception caused him and putative class members to purchase the Detergent over other available alternatives, and to pay a "premium or inflated price" to Costco, "instead of purchasing another[,] cheaper detergent." (*Id*.

¶ 20.) Plaintiff also alleges that, had he and putative class members never viewed the allegedly deceptive label, they would not have paid the alleged premium. (*Id*.) Plaintiff further contends that dermatologist recommendations are an important, material factor for Plaintiff and putative class members in determining which detergent product to purchase, and that they were motivated to select Defendant's Detergent because of the allegedly misleading Label. (*Id*. ¶ 21.)

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

**DISCUSSION**

I.      **Claims Under New York General Business Law §§ 349 and 350**

Plaintiff asserts that the Label violates GBL §§ 349 and 350 because it falsely implies that

the actual Detergent in question is recommended by dermatologists for those with sensitive skin

based upon the "ambiguity as to which, if any, of the brand's product detergents are excluded from

the dermatologists' recommendation," and the placement, font size and general presentation of

"key qualifying terms" on the Label.  (Pl. Opp. Mot. Dismiss ("Pl. Opp."), at 4, ECF No. 28 (citing

FAC ¶¶ 14, 16-17.); *id*. at 9 ("Even assuming that the eye of the reasonable consumer would, in

the brief moments of viewing the product label, both notice and unpack the implications of its

small and unbolded, hard to notice disclaimer, one would still be misled in reasonably

understanding that the brand recommendation relates to all of the brand's detergents, including the

brand detergent contained in the subject labeled bottle.") (citing FAC ¶ 14).)  Defendants assert

that Plaintiff fails to plausibly allege that the Product label is false or misleading.[1]  (*See* Def. Mem.

Supp. Mot. Dismiss ("Def. Mem."), at 7-8, ECF No. 25.)  Defendants do not argue that the

detergent in question is in fact recommended by dermatologists; instead, they contend that the

Label is limited to a claim about the *All Free Clear brand itself*, that the text on the label is easily

read and clearly conveys this message, and that a "reasonable consumer acting reasonably under

the circumstances understands what it means for doctors to recommend a 'brand' as opposed to a

---

[1] Defendants briefly assert that *all* of Plaintiff's claims must fail because they are all premised upon the assertion that the Product label is false or misleading.  (*See* Def. Mem. Supp. Mot. To Dismiss ("Def.  Mem."), at 7-8, ECF No. 25) (arguing Plaintiff fails to plausibly allege falsity or deception under GBL §§ 349 and 350, and noting; "[s]imilarly, to state a claim for negligent misrepresentation under New York law (Plaintiff's second cause of action), a plaintiff must allege … that 'the defendant made a false representation' which he or she should have known was incorrect … [Furthermore,] Plaintiff's claim[] … for unjust enrichment (Plaintiff's fourth cause of action), and his request for an injunction … (fifth cause of action), are likewise premised solely on his assertion that the … Label is misleading … The premise for all of Plaintiff's claims is that the … Label is false or misleading. Absent such allegations, none of Plaintiff's claims survive …   Accordingly … all of Plaintiff's causes of action should be dismissed.") (internal citations omitted).

particular product." (Def. Reply Mot. to Dismiss, at 5,7 ECF No. 29 ("There is no conceivable reason for consumers to miss that it is the 'detergent brand,' not this particular Product" that is the subject of the recommendation on the label.); Def. Mem. at 7-14.) For these reasons, Defendants argue that the Court can decide, as a matter of law, that the Label would not have misled a reasonable customer. (*See* Def. Mem., at 8.)

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]" N.Y. Gen. Bus. Law § 349(a). A plaintiff asserting a cause of action under Section 349 "must [demonstrate] three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Rephen v. Gen. Motors Corp.*, 15-CV-5206 (NSR), 2016 WL 4051869, at *4 (S.D.N.Y. July 26, 2016) (internal quotation marks and citations omitted). The deceptive act may be a representation or omission. *Braynina v. TJX Companies, Inc.*, 15-CV-5897 (KPF), 2016 WL 5374134, at *4 (S.D.N.Y. Sept. 26, 2016). The standard for recovery under New York General Business Law § 350 is identical to that of Section 349, with the caveat that it is specific to false advertising. *Id.*, at *4 ("The standard for recovery under ... § 350, while specific to false advertising, is otherwise identical to [§] 349") (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)); *see* N.Y. Gen. Bus. Law § 350 (noting Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"). Given this overlap, "courts have found that the scope of § 350 is as broad as that of § 349 … and that its essential elements are the same." *Braynina*, 2016 WL 5374134, at *4 (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)).

As Defendant acknowledges, whether a representation or omission is deceptive depends upon the likelihood that it will "mislead a reasonable consumer acting reasonably under the circumstances." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, (1995)) ("The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"); (Def. Mem. at 8) (citing *Becker v. Cephalon, Inc.*, 14-CV-3864 (NSR), 2015 WL 5472311, at *1 (S.D.N.Y. Sept. 15, 2015)).

Generally, this inquiry is not appropriate on a motion to dismiss.[2] *Kacocha v. Nestle Purina Petcare Co.*, 15-CV-5489 (KMK), 2016 WL 4367991, at *14, *16 (S.D.N.Y. Aug. 12, 2016) (remarking that "ample case law exists allowing § 349 claims over allegedly deceptively labeled consumer goods to progress beyond the motion-to-dismiss stage, largely based on the view that the question of what might deceive the reasonable consumer is a question of fact" and noting only in "'rare situation[s] [is] granting a motion to dismiss … appropriate' with respect to the issue of whether a reasonable consumer would be misled by representations about a product …. [but commenting that] discovery may well yield a different conclusion at summary judgment.") (citation omitted); *see Silva v. Smucker Nat. Foods, Inc.*, No. 14–CV–6154 (JG) (RML), 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) ("What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss. I cannot say as a matter of law at this early stage of the case that a reasonable

---

[2] "At the motion to dismiss stage, 'an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b) ..., but need only meet the bare-bones notice-pleading requirements of Rule 8(a) ....'" *Kacocha v. Nestle Purina Petcare Co.*, 15-CV-5489 (KMK), 2016 WL 4367991, at *13 (S.D.N.Y. Aug. 12, 2016) (citing *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)).

consumer could not interpret [Defendant's] representations to be a factual claim about [the product's] ingredients.") (internal citation omitted); *Segedie v. Hain Celestial Grp., Inc.*, 14-CV-5029 NSR, 2015 WL 2168374, at \*10 (S.D.N.Y. May 7, 2015) ("Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss."); *Verizon Directories Corp. v. Yellow Book USA, Inc.,* 309 F. Supp. 2d 401, 407 (E.D.N.Y.2004) (noting, in reference to a Lanham Act claim,[3] that "[a] federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare" that reasonable consumers would not be misled, and indicating that resolution of the issue may require "surveys, expert testimony, and other evidence of what is happening in the real world".); *see also Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 479–80 (S.D.N.Y. 2014) ("Although 'the presence of a disclaimer or other clarifying language *may* defeat a claim of deception,' the Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer.") (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)).

Even assuming the entire text of the Label is fully visible and easily read, the Court cannot conclude as a matter of law that *no reasonable consumer* on this motion to dismiss, that no reasonable consumer could be misled into believing that the Label indicates that both the brand, and in turn, the brand product bearing the actual Label, are recommended by dermatologists for sensitive skin. Notably, whether an interpretation is unreasonable as a matter of law is generally reached at this stage only where, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw are "patently implausible" or unrealistic. *See Stoltz v. Fage*

---

[3] *See Kacocha*, 15-CV-5489 (KMK), 2016 WL 4367991, at \*17 (S.D.N.Y. Aug. 12, 2016) ("Violations under the Lanham Act, 15 U.S.C. § 1125(a), and § 349 claims "are governed by the same standards.") (citing *Buffalo News, Inc. v. Metro Grp., Inc.*, No. 12-CV-808, 2013 WL 321578, at \*1–2 (W.D.N.Y. Jan. 28, 2013)).

*Dairy Processing Indus.*, *S.A.*, No. 14-CV-3826 (MKB), 2015 WL 5579872, at *20 (E.D.N.Y.

Sept. 22, 2015) (noting the [pending] case "d[id] not present *the type of patently implausible claim*

*that warrants dismissal as a matter of law* based on the reasonable consumer prong." ) (emphasis

added); *compare id*. at *4, 14–21 (declining to determine as a matter of law that a reasonable

consumer would not be deceived by Defendant's label marketing yogurt as "Total 0%," despite

indications that product contained calories, and noting "the mere inclusion of an accurate

disclaimer does not necessarily cure other potentially misleading statements or representations …

in a label or advertisement"); *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, 12–MD–2413, 2013 WL

4647512, at *15-16 (E.D.N.Y. Aug. 29, 2013) (noting, on motion to dismiss claims based on an

allegedly misleading "All Natural" label on products containing genetically modified organisms

("GMOs"), that although language on the product packaging, "Made with ALL NATURAL

ingredients," was surrounded by text stating "No MSG—No Preservatives—No Artificial

Flavors," which "g[a]ve context to the label's center pronouncement" the court could not "hold as

a matter of law that … no reasonable consumer would be deceived into believing the product is

GMO-free...."), *with id*. (inferring that, to conclude as a matter of law that an interpretation is

unreasonable requires satisfying "the *heavy burden of 'extinguish[ing] the possibility'* that a

reasonable consumer could be misled" by a product label, and noting dismissal as a matter of law

is warranted where allegedly misleading interpretation "*border[ed] on fantasy*") (internal citation

omitted) (emphasis added); *Red v. Kraft Foods, Inc*., 2012 WL 5504011 at *3-4 (C.D. Cal. Oct.

25, 2012)[4] (dismissing claim based upon allegedly deceptive label indicating crackers were "made

with real vegetables" where "it *strain[ed] credulity*" to imagine that a reasonable consumer would

believe that the box of crackers in question "contain[ed] a huge amounts of vegetables" and noting

---

[4] *See Kacocha*, 2016 WL 4367991, at *14 n.22 (S.D.N.Y. Aug. 12, 2016) (noting "California's 'reasonable consumer' inquiry can properly inform New York's.")

"[t]he fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables") (emphasis added); *Videtto v. Kellogg USA*, 2009 WL 1439086 at *3 (E.D. Cal. May 21, 2009) (dismissing claims because it was unlikely consumers would believe that "Froot Loops" cereal contains real, nutritious fruit); *McKinnis v. Kellogg USA*, 07–CV–2611, 2007 WL 4766060, at *4 (C.D.Cal. Sept. 19, 2007) (dismissing claim based upon allegedly deceptive packaging as a matter of law where plaintiffs' allegations were "not rational, let alone reasonable").

Nor do the cases cited by Defendant indicate a ruling to the contrary is required, as these cases are easily distinguishable from the instant action on this issue. (*See* Def. Mem. at 8-9) (citing, for example, *Fink*, 714 F.3d 739 (dismissing consumer fraud claims on basis that "plaintiff[,] who allege[d] that he was deceived by an advertisement[,] may not misquote or misleadingly excerpt the language of the advertisement in his pleadings.")); *see also Stoltz*, 2015 WL 5579872, at *19 (noting the "issue … in *Fink*, was … whether Plaintiffs' alleged expectation was actually inconsistent with the reality.").[5] Because the Court finds Plaintiff has plausibly alleged that the Label was misleading, his GBL claims survive at this stage.

## II.    Negligent Misrepresentation

To allege a claim for negligent misrepresentation a plaintiff must assert "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on

---

[5] Because the Court finds Plaintiff has plausibly alleged his GBL claims on this basis, the Court need not address the parties' alternate arguments. Nor do Plaintiffs' other claims fail, as Defendants argue, on the basis that Plaintiff has failed to allege that the Label is false or misleading. (*See supra*, at 5, note 1.)

it to his or her detriment." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (internal quotation marks omitted). Defendants argue that Plaintiff's claim of negligent misrepresentation should be dismissed because Plaintiff has failed to plausibly allege the first element – that a requisite special relationship exists between him and Defendant Sun Products. (*See* Def. Mem. at 17.)

"In the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the 'existence of ... a special relationship ... [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech.'" *Izquierdo v. Mondelez Int'l, Inc.*, 16-CV-04697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (citing *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996)). To determine whether a special relationship, and in turn, a duty to provide correct information exists, courts look to the following factors: "whether the person making the representation held or appeared to hold unique or special expertise, whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.* (citing *Kimmell*, 89 N.Y.2d at 264.) However, "[b]ecause 'casual' statements and contacts are prevalent in business, liability in the commercial context is 'imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *Greene v. Gerber Prod. Co.*, 16-CV-1153 (MKB), 2017 WL 3327583, at *25 (E.D.N.Y. Aug. 2, 2017) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004); and citing *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) ("[T]he law of negligent misrepresentation

requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified.")).

Plaintiff cites to *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013)[6] in support of his assertion that the "special relationship" necessary to assert a negligence misrepresentation claim exists between the parties. In *Hughes v. Ester C Co.*, which involved the deceptive marketing of a vitamin tablet, the court found that the plaintiff had pled sufficient facts from which a special relationship could be inferred between the parties where defendants "held themselves out as holding a type of special expertise" regarding the purported health benefits of the tablet in question, based upon various representations made. *Hughes*, 930 F. Supp. 2d 439. Specifically, the court noted that plaintiff alleged defendant's website contained a section entitled "Ask an Expert," which represented that the "expert" took the vitamin tablet "daily" him or herself based upon "clinical research … support[ing] the use of th[e] product;" that the expert believed the tablet was backed by "good clinical research" and that "the company [was] … completely committed to clinical studies." *Id.* at 475. In analyzing plaintiff's claim, the court also noted that plaintiff asserted that the product's label "contained language that, at the very least, suggest[ed] some level of medical or scientific backing for its claims" including that the vitamin came from the "#1 Pharmacist Recommended Brand," and that the contents of the vitamin "work[ed] synergistically"

---

[6] Beyond asserting that *Hughes v. Ester C Co.* is an "outlier" decision that failed to comport with New York law and "was not followed by several, more recent decisions," Defendants do not engage with Plaintiff's contention that this case is relevant to the instant action. (*See* Def. Reply at 10.) The Court notes that Defendants provide no legal citations to support their characterizations of this case, and in fact, subsequent cases have not disregarded *Hughes* as an outlier, and instead, have cited to it on this very issue. *See, e.g.*, *Greene v. Gerber Prod. Co.*, 16-CV-1153 (MKB), 2017 WL 3327583, at *26 (E.D.N.Y. Aug. 2, 2017); *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 193 (S.D.N.Y. 2016); *Stoltz v. Fage Dairy Processing Indus., S.A.*, 14-CV-3826 (MKB), 2015 WL 5579872, at *25 (E.D.N.Y. Sept. 22, 2015) (*citing Hughes,* and noting a "special relationship [may be sufficiently alleged] …[where] defendants' marketing held defendants out as having 'special expertise regarding the purported health benefits' of supplement; labeling on supplement contained language suggesting medical or scientific backing for claims and defendants' website included section purportedly written by 'expert' recommending daily use of supplement 'because it is gentler on the stomach and because of all the clinical research that supports the use of this product'"); *Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164, 171 (W.D.N.Y. 2014).

to "enhance absorption [of Vitamin C into one's system]", providing "immune system support," and supporting "heart health antioxidant health, healthy bones and joints" among other things. *Id.*

Here, Plaintiff contends that Defendant Sun Products claim "clinical proof" of the benefits of the All Free Clear products line and its mild effect on skin. (*See* Pl. Opp. at 19.) In support, Plaintiff points to language from Sun Product's website indicating that the brand is "the #1 Recommended brand by dermatologists, allergists and pediatricians for sensitive skin;" and that its products are hypoallergenic, and "clinically proven" to be mild on skin. (*Id.* at 19) (citing https://www.all-laundry.com/products/sensitive-skin-detergent).[7] Additionally, of course, the Label from which this action stems indicates that the Detergent is from the "#1" brand recommended by dermatologists for sensitive skin.

In *Hughes*, as described previously, the Court relied on the volume and content of the representations made by the defendant-manufacturer, taken together, to determine that the plaintiff-consumer had plausibly alleged a special relationship. In the instant action, even drawing all inferences in Plaintiff's favor as the nonmoving party, the Court cannot find that the representations made by Sun Products on their website and Label – that their products are "clinically proven" to be gentle on skin, and are "#1" recommended by dermatologists and allergists – resemble the instances catalogued in *Hughes* in volume and substance. As such, the Court cannot conclude, with *Hughes* as the metric, that Plaintiff has plausibly alleged facts sufficient for the Court to infer that the "special relationship" necessary for a negligent misrepresentation claim is present here. As such, the Court cannot find that Plaintiff's negligent

---

[7] Though Plaintiff directs the Court to this language in its Opposition Memorandum, it does not cite to this language in its Complaint. This website is publically available, and Defendants do not dispute the authenticity of the site. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) ("[f]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.") (internal citations omitted).

misrepresentation claim, as asserted, can overcome the presumption that advertisements are generally insufficient to establish such a relationship. Stoltz, 14-CV-3826 (MKB), 2015 WL 5579872, at \*25 (E.D.N.Y. Sept. 22, 2015) ("courts have consistently held that advertisements alone are not sufficient" to establish a "special relationship"). Thus, the Court dismisses this claim without prejudice.

III.    Unjust Enrichment[8]

To state a claim for unjust enrichment, a plaintiff must plead that (1) the defendant was enriched (2) at the plaintiff's expense and (3) that equity and good conscience require the defendant to make restitution. *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014); *accord Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) ("The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which 'in equity and good conscience' should be paid to the plaintiff"). Unjust enrichment is available as a cause of action "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Corsello*, 18 N.Y.3d at 790. This claim is "not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id*.

Plaintiff alleges that he paid a premium or inflated price directly to Costco for the Detergent Product, rather than purchasing a cheaper alternative elsewhere due to Defendant Sun Product's deceptive and misleading label, and that Costco is thus liable under the theory of unjust

---

[8] The Court need not address Defendants' argument that Plaintiff's unjust enrichment claim must fail because "the label is not misleading," as this Court has found that Plaintiff has in fact plausibly alleged that the Label is misleading.

14

enrichment. (*See* Pl. Am. Compl. at ¶ 20; Pl Opp. at 23) ("Plaintiff does not allege that Costco committed any deceptive act or engaged in intentionally wrongful conduct … The claim is based on different allegations of fact [from those asserted against Sun Products] – Costco's unfair enrichment through consumers' mistaken purchases of a deceptively advertised product carried only by Costco as opposed to Sun Product's targeted acts of deceptive labeling – and an independent theory of liability – inequitable enrichment as opposed to consumer fraud and false advertising."). Defendants argue that Costco cannot be held liable "under any … cause[] of action sounding in consumer deception, absent allegations that it actually participated in misleading activities." (Def. Mem. at 16-17.)

Defendants do not cite a single case in which a court dismissed an unjust enrichment claim adequately alleged against the retailer for its *receipt of payment* for a product bearing an allegedly deceptive label affixed by the manufacturer. (*See* Def. Mem., at 15-16) (citing, for example, *Sullivan v. Aventis, Inc*., 14-CV-2939 (NSR), 2015 WL 4879112, at *10 (S.D.N.Y. Aug. 13, 2015) (unjust enrichment claim dismissed as duplicative where it was based on facts identical to other claims); *Cohn v. Kind, LLC*, 13-CV-8365 (AKH), 2015 WL 9703527, at *3 (S.D.N.Y. Jan. 14, 2015) (dismissing *false advertisement claim asserted against retailers* for manufacturer's alleged mislabeling of products because plaintiffs failed to allege any "specific conduct" by retailers that would impute manufacturer's allegedly deceptive statements to them, and because retailers who "simply" "authoriz[ed] the sale" could not be held *vicariously liable for false advertisement claim*); *Corsello*, 18 N.Y.3d at 790 (unjust enrichment claim duplicative of other claims asserted against defendant); *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 212 (E.D.N.Y. 2004) (holding plaintiff could not hold defendant retailer liable "under theories of negligence, breach of warranty, or strict liability" under circumstance alleged). Furthermore, though apparently not

directly addressed in this Circuit, instructive case law militates against dismissing at this stage, Plaintiff's unjust enrichment claim, asserted only against the retailer for the "premium" Plaintiff was allegedly induced to pay for a product he believed was most recommended by dermatologists for sensitive skin. *See Waters v. Electrolux Home Prod., Inc.*, 154 F. Supp. 3d 340, 351 (N.D.W. Va. 2015)[9] (unjust enrichment claim failed as asserted against manufacturer because plaintiff purchased allegedly defective product from retailer and thus did not confer a direct benefit upon or pay "premium" to manufacturer directly); *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 330 (D.N.J. 2014) ("dismiss[ing] the unjust enrichment claim as against [the manufacturer] only, because the [p]laintiffs conferred no direct benefit on [the manufacturer]," noting "*[w]hen consumers purchase a product from a third party, they confer a benefit on that third party, not on the manufacturer*" and "*find[ing], however, that Plaintiffs have adequately stated unjust enrichment claims as against the [retailers]* because [t]he FAC allege[d] that Plaintiffs conferred a direct benefit on the retailer-defendants … [by] pa[ying] those retail defendants a price premium due to the mislabeling of the [product in question] …. [and] that Defendants … [were] unjustly enriched by retaining the revenues derived from Plaintiffs' purchases …. Which set[] forth the elements of an unjust enrichment claim.") (internal citations omitted); *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (unjust enrichment claim against

---

[9]The Court appreciates that case law precedent can vary by state. *Compare Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 330 (D.N.J. 2014) ("many courts have suggested that there are no significant disparities in the unjust enrichment laws of the 50 states.") (citing *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723 (D.N.J. 2011) ("Numerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state.") *with Hughes v. The Ester C Co.*, 317 F.R.D. 333, 353 (E.D.N.Y. 2016), *reconsideration denied sub nom.*, 2017 WL 3129767 (E.D.N.Y. July 21, 2017) ("States differ as to the relationship or connection that must exist between the parties for an unjust enrichment claim.") (citing *Vista Healthplan, Inc. v. Cephalon, Inc.*, 06-CV-1833, 2015 WL 3623005, at *29 (E.D. Pa. June 10, 2015) (explaining differences between various State laws including New York's unique requirement that a "relationship or connection between the parties that is not too attenuated" must be shown)). However, the Court finds cases from sister circuits nonetheless informative as to the survival of Plaintiff's unjust enrichment claim at this juncture.

manufacturer failed where plaintiff purchased the allegedly deceptive products from retailer rather than manufacturer); *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 836 (S.D. Ohio 2003) ("Plaintiff[s] alleges that … [they] conferred a benefit upon … [Retailer-Defendants] when they purchased [the product] … and that it was unjust for the Defendants to retain the benefit in light of the fact that the product purchased … was not what it was purported to be. Accordingly, the Plaintiff has asserted claims … that meet all of the required elements for a claim of unjust enrichment."); *see also Brown v. Gen. Nutrition Companies, Inc*., 356 F. App'x 482, 484 (2d Cir. 2009) (reflecting unjust enrichment claim was asserted against GNC as retailer of allegedly deceptive product in consumer fraud action); *cf. Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013) (noting "[u]nder New York law, unjust enrichment does not require a direct relationship between the parties" where plaintiff asserted said claim against manufacturer). Because Plaintiff alleges a separate claim of unjust enrichment against Costco as the direct recipient of a premium paid for an allegedly deceptively mislabeled product, at this stage, the Court finds that Plaintiff has plausibly alleged a claim for unjust enrichment against this Defendant.[10]

## IV.    Injunctive Relief

Defendant moves to dismiss Plaintiff's fifth cause of action for injunctive relief. Plaintiff neglects to respond to Defendants' argument. On this basis, the Court may deem this claim abandoned. *See 105 Mt. Kisco Assocs. LLC v. Carozza*, 15-CV-5346 (NSR), 2017 WL 1194700, at *22 (S.D.N.Y. Mar. 30, 2017) (finding plaintiff's choice not to oppose Defendants' arguments purposeful, and deeming that cause of action abandoned) (citing *Tuman v. VL GEM LLC*, 15-CV-

---

[10] That Plaintiff could perhaps pursue an unjust enrichment claim against Sun Products as the manufacturer does not necessarily preclude him from pursuing such a claim against Costco as the retailer. As the Court notes, Defendants have cited no cases indicating such a claim may not proceed against a retailer under the circumstances present here, or that it would be appropriate to make such an inferential leap, nor has the Court identified any. Nor, as indicated previously, is the Court convinced by Defendants' arguments that it can deem this claim duplicative at this stage. As such, the Court permits Plaintiff's unjust enrichment claim to proceed at this stage.

7801 (NSR), 2017 WL 781486, at *7-8 (S.D.N.Y. Feb. 27, 2017) (citing *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 618 (S.D.N.Y. 2015) ("abandonment constitutes an[ ] independent ground for dismissal")).

The Court also notes that an injunction is a remedy, not a cause of action. *Segovia v. Vitamin Shoppe, Inc.*, 14-CV-7061 (NSR), 2016 WL 8650462, at *10 (S.D.N.Y. Feb. 5, 2016) (citing *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014)). "The Court's task on a motion to dismiss is to consider the factual allegations in [Plaintiff's] complaint to determine if they plausibly suggest an entitlement to relief, and not to determine the appropriate remedy." *Id.* (citing *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, 10-CV-24 (PGG), 2011 WL 3251554, at *16 (S.D.N.Y. July 28, 2011) (internal citation and quotation marks omitted)).

Accordingly, the Court dismisses Plaintiff's claim for injunctive relief on both bases. The Court does not, however, take any position as to whether injunctive relief is an appropriate remedy for Plaintiff's surviving claims, and such relief may only be granted upon a proper showing.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. In accordance with this Opinion, Plaintiff's cause of action for injunctive relief is dismissed with prejudice, and Plaintiff's cause of action for negligent misrepresentation is dismissed without prejudice. Should Plaintiff seek to amend his complaint with regard to the negligent misrepresentation claim, his request to amend must be made by letter application within fifteen days of the date of this Memorandum and Order. The letter shall address the legal bases upon which any proposed amendment would be based, and further address why any amendment would not be futile or inconsistent with this Memorandum and Order. A proposed Second

Amended Complaint must be appended to the letter request. Defendants are directed to respond

to Plaintiff's letter application within ten days. The Clerk of Court is also directed to termination

the motion at ECF No. 24.

Dated: September 25, 2017
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge