# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAYA EIDELMAN, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>THE SUN PRODUCTS CORPORATION and COSTCO WHOLESALE CORPORATION,<br><br>    Defendants. | Civil Action No. 7:16-cv-03914-NSR |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036
(212) 790-4500

Attorneys for Defendants
The Sun Products Corporation and
Costco Wholesale Corporation

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND AND UNDISPUTED FACTS ....................................................... 2

I.     THE PARTIES, CHALLENGED PRODUCT AND CLAIM ........................... 2

     A.     Sun Products and all® Liquid Laundry Detergent ................................ 2

     B.     Costco Exclusive all® PLUS+ Liquid Laundry Detergents ................................ 3

     C.     The Product Label and the Recommended Brand Claim ...................... 4

     D.     Plaintiff's One-Time Purchase of the White Bottle at Costco .............. 6

II.     THE RECOMMENDED BRAND CLAIM IS TRUE AND SUPPORTED ................... 7

III.     NEW YORK COSTCO MEMBERS ARE LOYAL TO THE PRODUCT ................ 8

     A.     Members Who Buy the White Bottle Are Repeat Purchasers .............. 8

     B.     Members Who Buy the White Bottle Do Not Return the Product ........ 8

     C.     Members Who Buy the White Bottle Do Not Complain About It ........ 9

IV.     THE WHITE BOTTLE IS NOT SOLD AT A PREMIUM PRICE, AND
PLAINTIFF DID NOT PAY A PRICE PREMIUM ........................................... 10

     A.     The Pricing of the White Bottle and Blue Bottle Detergents Shows There
Is No Price Premium for the White Bottle ........................................... 10

               1.     Sun Products Sells Costco the White and Blue Bottles for the Same
Cost ...................................................................................... 10

               2.     Costco Set the Same Everyday Low Price for the White and Blue
Bottles ................................................................................. 11

               3.     New York Members Paid Less for the White Bottle Than the Blue
Bottle ................................................................................... 11

               4.     Plaintiff Paid Less for the White Bottle Than He Would Have for
the Blue Bottle on March 8, 2016 ........................................ 12

               5.     Costco Applied Discounts Equally to the White Bottle and Blue
Bottle ................................................................................... 12

     B.     Costco's Kirkland Signature® Free & Clear Detergent Shows There Is No
Price Premium .................................................................................... 13

     C.     Top-Selling Detergents in New York Costco Warehouses Show There Is
No Price Premium .............................................................................. 14

     D.     Other Laundry Detergents Purchased by Plaintiff Show He Did Not Pay
More for the White Bottle .................................................................. 14

V.     PLAINTIFF HAS NOT OFFERED EVIDENCE OF A PRICE PREMIUM ................. 15

VI.     THIS CASE IS RIPE FOR SUMMARY JUDGMENT ................................. 16

## TABLE OF CONTENTS
### (continued)

**Page**

ARGUMENT ............................................................................................................ 16

I.  PLAINTIFF CANNOT PROVE A REQUIRED ELEMENT OF HIS N.Y. GBL
    §§ 349 AND 350 CLAIMS ........................................................................... 17

    A.  Actual Injury Is a Required Element of Plaintiff's N.Y. GBL Claims ................ 18

    B.  Undisputed Facts Show That Plaintiff Did Not Pay a Premium Price ............... 18

    C.  Plaintiff Has Not Offered Evidence of Price Premium Injury ............................ 21

II.  PLAINTIFF LACKS EVIDENCE TO PROVE UNJUST ENRICHMENT ................. 22

III.  PLAINTIFF DOES NOT HAVE STANDING TO SEEK INJUNCTIVE RELIEF ....... 24

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ault v. J.M. Smucker Co.*,
   310 F.R.D. 59 (S.D.N.Y. 2015) .................................................................................18, 19

*Boule v. Hutton*,
   320 F. Supp. 2d 132 (S.D.N.Y. 2004) .................................................................................20

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................16

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .................................................................................24

*DeBlasio v. Merrill Lynch & Co., Inc.*,
   No. 07 Civ 318(RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) .................23

*Ebin v. Kangadis Food Inc.*,
   No. 13 Civ. 2311 (JSR), 2014 WL 737878 (S.D.N.Y. 2014) .................................22

*Hicks v. Baines*,
   593 F.3d 159 (2d Cir. 2010) .................................................................................17

*Hollander v. Metro. Transp. Auth.*,
   48 Misc. 3d 1206(A), 2015 WL 4077193 (Sup. Ct. N.Y. Cty. June 25, 2015) .................21

*In re Whole Foods Market Grp., Inc. Overcharging Litig.*, 397 F. Supp. 3d 406
   (S.D.N.Y. 2019) .................................................................................21, 23

*Koch v. Acker, Merrall & Conduit Co.*,
   18 N.Y.3d 940 (2012) .................................................................................17

*Kommer v. Bayer Consumer Health*,
   710 F. App'x 43 (2d Cir. 2018) .................................................................................25

*Leibowitz v. Cornell Univ.*,
   584 F.3d 487 (2d Cir. 2009) .................................................................................22

*Marini v. Adamo*,
   12 F. Supp. 3d 549, 556 (E.D.N.Y. 2014) *aff'd*, 644 F. App'x 33 (2d Cir. 2016) .................24

*Marshall v. Hyundai Motor Am.*,
   No. 12 Civ. 3072 (CM), No. 15 Civ. 4722 (CM), 2019 WL 2678023
   (S.D.N.Y. June 14, 2019) .................................................................................18, 21

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .................................................................................16

*Merck Eprova AG v. Gnosis S.p.A.*,
   901 F. Supp. 2d 436 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014) .................17

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) .................................................................................24

## TABLE OF AUTHORITIES
### (continued)

Page

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A.*,
    137 F. Supp. 2d 502 (S.D.N.Y. 2001)............................................................17

*Preira v. Bancorp Bank*,
    885 F. Supp. 2d 672 (S.D.N.Y. 2012)..........................................................18, 21

*Quiroz v. Beaverton Foods, Inc.*,
    No. 17-CV-7348 (NGG) (JO), 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019) ....................25

*Rephen v. Gen. Motors Corp.*,
    No. 15-cv-5206 (NSR), 2016 WL 4051869 (S.D.N.Y. July 26, 2016) ..................17

*Segovia v. Vitamin Shoppe, Inc.*,
    No. 14-CV-7061 (NSR), 2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017)....................18, 20, 22

*Singleton v. Fifth Generation, Inc.*,
    No. 5:15-CV-474 (BKS/TWD), 2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017) ..................19

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999)..........................................................................18, 21

*Tropical Sails Corp. v. Yext, Inc.*,
    No. 14 CIV 7582, 2017 WL 1048086 (S.D.N.Y. Mar. 3, 2017) ........................23

*Vigiletti v. Sears, Roebuck & Co.*,
    42 A.D.3d 497 (2d Dep't 2007)..............................................................23

*Weiner v. Snapple Beverage Corp.*,
    No. 07 Civ. 8742(DLC) 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)..................19

*Weiner v. Snapple Beverage Corp.*,
    No. 07 Civ. 8742(DLC), 2011 WL 196930 (S.D.N.Y. Jan. 21, 2011) ................18, 20, 22, 23

## STATUTES

N.Y. Gen. Bus. Law § 349 ...................................................................... *passim*

N.Y. Gen, Bus. Law § 350 ...................................................................... *passim*

## RULES

Fed. R. Civ. P. 30(b)(6)..........................................................................16

Fed. R. Civ. P. 56(c) .............................................................................16

## TABLE OF CITATIONS

Boedeker Tr.              Deposition of Stefan Boedeker, taken on July 22, 2019,
                         Exhibit 5 to the Topper Declaration

Class Cert. Mem.         Plaintiff's Memorandum of Law in Support of Motion for Class
                         Certification, dated August 19, 2016

Eidelman Tr.             Deposition of Shaya Eidelman, taken on February 7, 2019,
                         Exhibit 4 to the Topper Declaration

FAC                      Plaintiff's First Amended Class Action Complaint, dated September 7,
                         2016 (Dkt. 18)

GC ¶                     Declaration of George Cassidy in Support of Defendants' Motion for
GC Ex.                   Summary Judgment, dated November 21, 2019, and exhibits attached
                         thereto

GC Tr.                   Deposition of George Cassidy, taken on February 22, 2019,
                         Exhibit 6 to the Topper Declaration

JD ¶                     Declaration of Jillaine Dellis in Support of Defendants' Motion for
                         Summary Judgment, dated November 21, 2019

MM ¶                     Declaration of Michael Monteleone in Support of Defendants' Motion
MM Ex.                   for Summary Judgment, dated November 22, 2019, and the exhibit
                         attached thereto

Topper ¶                 Declaration of Prana A. Topper in Support of Defendants' Motion for
Topper Ex.               Summary Judgment, dated November 22, 2019, and exhibits attached
Topper Declaration       thereto

WS Tr.                   Deposition of Wendy Saladyga, taken on January 10, 2019,
                         Exhibit 7 to the Topper Declaration

## PRELIMINARY STATEMENT

Defendants The Sun Products Corporation ("Sun Products") and Costco Wholesale Corporation ("Costco") are entitled to summary judgment as a matter of law.  Plaintiff Shaya Eidelman purchased a single bottle of a liquid laundry detergent that Sun Products manufactures exclusively for Costco, all® free clear PLUS+ ("White Bottle").  He says he did this because he thought the label stated something it does not.  The label clearly says:  "from the #1 Detergent Brand Recommended by Dermatologists for Sensitive Skin" ("Recommended Brand Claim").  In Plaintiff's view, the label really means that the White Bottle was the #1 *product* recommended by dermatologists.  Plaintiff's entire case relies on this alleged "deception".

The Recommended Brand Claim on the White Bottle label is true.  Surveys of dermatologists conducted by respected third-party survey firms support the claim.  Plaintiff cannot dispute this.  But to resolve this litigation, the Court need not determine whether the Recommended Brand Claim is true or somehow misleading, and it need not evaluate Plaintiff's peculiar interpretation of the label.  Plaintiff's claims fail for an independent dispositive reason.

Injury is a necessary element of Plaintiff's claims against Sun Products under N.Y. General Business Law §§ 349 and 350.  New York law is clear that merely purchasing a product does not establish injury.  Plaintiff's theory of injury is that consumers paid a price premium for the White Bottle due to the Recommended Brand Claim, a theory he pursued through extensive discovery.  The undisputed evidence shows that Costco's New York members did not pay a price premium, and that they are satisfied customers – many are repeat purchasers who do not return or complain about the White Bottle.  These undisputed facts are fatal to Plaintiff's claims.

This case presents a unique undisputed factual situation.  Costco sold two all® PLUS+ liquid laundry detergents:  the White Bottle – which is free of dyes and perfumes and includes the Recommended Brand Claim on its label – and the "Blue Bottle" – which has fragrance and

does not include the Recommended Brand Claim.  Sun Products sells Costco both detergents at the same price; it does not charge Costco a price premium for the White Bottle.  Costco in turn charges the same retail price for the Blue and White Bottles.  In fact, on average, the White Bottle actually cost *less* than the Blue Bottle during the relevant period.  Plaintiff himself paid less for the White Bottle than he would have if he had instead bought the Blue Bottle.  These undisputed facts alone show there was no price premium for the White Bottle.

And, there is more.  The White Bottle also ███████████████████████████████████ ███████████████████████████████████  Of the top-selling laundry detergents in New York Costco warehouses, the White Bottle was the ████████████████.  Plaintiff paid less for the White Bottle than he did for the other laundry detergents he purchased at Costco. Finally, Plaintiff's expert testified that he does not have an opinion as to whether any consumer paid a price premium for the White Bottle.

Plaintiff's unjust enrichment claim against Costco fails for the same reasons.  Purchasers of the White Bottle did not pay more because of the Recommended Brand Claim.  Plaintiff also has no evidence that Costco benefited unfairly to the detriment of Plaintiff (or any consumer), or that there are equitable considerations that would entitle Plaintiff to relief against Costco.

On this undisputed record, summary judgment is proper on all of Plaintiff's claims.

## **BACKGROUND AND UNDISPUTED FACTS**

### I.     **THE PARTIES, CHALLENGED PRODUCT AND CLAIM**

####     A.     **Sun Products and all® Liquid Laundry Detergent**

Sun Products manufactures laundry products, including detergents, fabric softeners and laundry boosters, under the well-known brand name all®.[1]  (MM ¶ 3)

---

[1] Following Henkel's acquisition of Sun Products, Henkel Corporation manufactures all® brand products. (MM ¶ 3)  Sun Products, the Defendant named in the action, is referred to throughout this memorandum.

2

Sun Products manufactures all® stainlifter detergents that include fragrance and come in blue-colored bottles with the "all® with stainlifters" logo on their labels.  (MM ¶ 4)

For more than a decade, Sun Products has also manufactured laundry detergents that are free of dyes and perfumes under the "all® free clear" brand.  (MM ¶ 5)  all® free clear detergents come in white bottles, and their labels include the "all® with stainlifters" logo and a graphic stating "free" of perfumes and "clear" of dyes.  (MM ¶ 5)

**B.     Costco Exclusive all® PLUS+ Liquid Laundry Detergents**

Costco is a membership warehouse club, dedicated to bringing its members the best possible prices on quality, brand-name merchandise.  (GC ¶ 3)  Costco members have access to many different types of products, including ones they can purchase only at Costco warehouses, Costco's private label Kirkland Signature® products, and brand-name products created specifically for Costco.  (GC ¶ 3; MM ¶ 8)

In late 2014, Costco started selling two all® PLUS+ liquid laundry detergents:

- all® stainlifter PLUS+ with fragrance in a blue bottle ("Blue Bottle"), and

- all® free clear PLUS+, which is 100% free of dyes and perfumes, in a white bottle ("White Bottle" or  "Product").  (GC ¶ 10-12; MM ¶ 8-9)

The Blue Bottle and White Bottle are the same size – 237 fluid ounces and 158 loads of laundry – and both are "PLUS+" – meaning they offer "ADDED WHITENING POWER" compared with all® stainlifter and all® free clear detergents available outside of Costco.  (MM ¶ 10; GC ¶ 12)  Sun Products manufactures all® PLUS+ detergents exclusively for Costco, and only Costco members can buy them.  (MM ¶ 12; GC ¶ 10)  Costco announced the new all® PLUS+ detergents in the October 2014 issue of *The Costco Connection*, a lifestyle magazine for Costco members.[2]

---

[2] An archive of *The Costco Connection* issues is available online.  This page appears in the October 2014, Volume 29, Number 10 issue:  http://www.costcoconnection.com/connection/201410?pg=17#pg17 *accessed on* Nov. 21, 2019.  (GC Ex. 3)  This was also produced during discovery.  (Topper Ex. 2)

**October 2014:** *The Costco Connection*



### C.    The Product Label and the Recommended Brand Claim

This litigation concerns a single statement on the White Bottle label.  (FAC ¶ 10-12;

Topper Ex. 4, Eidelman Tr. 220:13-222:25, 251:16-22)  Plaintiff takes issue with the statement

that the White Bottle is "from the #1 Detergent Brand Recommended by Dermatologists for

Sensitive Skin" (the "Recommended Brand Claim").  (*Id.*)  The Blue Bottle has not included the

Recommended Brand Claim.  (MM ¶ 11; GC ¶ 12)  Below is a photo of the White Bottle

Plaintiff purchased in March 2016.  (Topper Ex. 1; Eidelman Tr. 87:15-88:20)

4

**White Bottle Purchased by Plaintiff**



Here is a true-to-size picture of the Recommended Brand Claim as it appears on the upper right corner of the White Bottle label:



Plaintiff does not allege that the Recommended Brand Claim is false.  (FAC ¶ 10-12) Instead, he argues that the presentation of the words is somehow misleading in that a reasonable consumer would understand that the White Bottle is the #1 *product* recommended by dermatologists for sensitive skin, ignoring the plain language of the label.  (FAC ¶ 11, 14)

Plaintiff does not challenge any other statement on the White Bottle label, including that the White Bottle is (a) "100% FREE of Dyes & Perfumes", (b) "free of perfumes" and "clear of

dyes", (c) "Gentle for sensitive skin", (d) "PLUS+ with ADDED WHITENING POWER!* [*vs. all® free clear]", or (e) "WHITENS AND BRIGHTENS CLOTHES BETTER THAN BEFORE*".  (FAC ¶ 10-12; Eidelman Tr. 251:16-22)  As shown above, many of these statements are larger and more prominent than the Recommended Brand Claim.

### D.   Plaintiff's One-Time Purchase of the White Bottle at Costco

Plaintiff has been a Costco member since July 2012.  (Eidelman Tr. 49:5-50:2)  Plaintiff purchased a single bottle of the White Bottle from the Costco warehouse in Nanuet, New York, on March 8, 2016.  (Id. at 33:3-11; Topper Ex. 3 at p. 6)  He paid $15.79.  (Eidelman Tr. at 98:23-99:6)

The Complaint alleges that the Recommended Brand Claim "caused [him and others] to decide to purchase [the White Bottle] over other available liquid laundry detergents, as well as to pay the premium or inflated price charged by Costco for the product over other cheaper detergents."  (FAC ¶ 36)  The Complaint states that "Plaintiff viewed the labels on the detergent bottles laid out for sale" before purchasing the White Bottle, but he testified under oath, "Yeah, I don't think that I looked at any other ones."  (FAC ¶ 20, Eidelman Tr. 86:5-22)  Plaintiff did not allege that he considered purchasing any detergent other than the White Bottle.  (See FAC)



Instead, Plaintiff contacted a lawyer and filed this lawsuit in June 2016, seeking to represent New York purchasers of the Product who allegedly were injured by paying a "premium or inflated price" for the White Bottle.  (FAC ¶ 20, 36)

## II.    THE RECOMMENDED BRAND CLAIM IS TRUE AND SUPPORTED

Surveys of healthcare professionals conducted by a respected third-party survey company support the Recommended Brand Claim.  (MM ¶ 13)

(MM ¶ 17, Ex. 1)  The ███████ survey supports the Recommended Brand Claim.  (MM ¶ 17, Ex. 1)

---

[3] ████████████████████████████████████████████████████████

[4] Sun Products produced documentation concerning the ███████ survey, but Plaintiff did not ask questions about the survey during depositions.  Plaintiff issued a non-party subpoena to the survey company, but then did not enforce the subpoena.

III.     **NEW YORK COSTCO MEMBERS ARE LOYAL TO THE PRODUCT**

Plaintiff has alleged that Costco was unjustly enriched "through consumers' mistaken purchases of a deceptively advertised product . . . ."  (Dkt. 28 at 22-23)  Costco members' conduct shows that Plaintiff's allegation is wrong.  Costco members "trust and support" the White Bottle, as Costco testified at deposition:  "[O]ur members have a following to [the Product] . . . .  They believe in the [P]roduct, because we see it in our sales numbers. . . ." (Topper Ex. 6, GC Tr. 193:19-194:4)  The undisputed record – based on detailed sales data – confirms this.  New York members purchase the White Bottle again and again, and they do not return or complain about the Product.  From its launch in late 2014 through March 2018, the White Bottle has been among ████████████ laundry detergents at New York Costco warehouses.  (GC ¶ 33)  Costco sold █████ units of the White Bottle at its New York warehouses between September 23, 2014 and March 5, 2018.[5]  (GC ¶ 33)

A.     **Members Who Buy the White Bottle Are Repeat Purchasers**

While Plaintiff purchased the White Bottle only once, ████████ of New York Costco members who purchased the White Bottle have done so ████████, and ████████ ███ of those repeat customers made ████████ purchases.[6]  (GC ¶ 34)

B.     **Members Who Buy the White Bottle Do Not Return the Product**

Costco has always had a liberal return policy and will refund the entire purchase price of a product if a member is dissatisfied for any reason.  (GC ¶ 9)  Even with this return policy, less than ████████ of White Bottle purchasers at New York Costco warehouses returned the Product for any reason during the relevant period.  (GC ¶ 35)

---

[5] This time period is referred to as the relevant period throughout this memorandum.  This is the multiyear period for which Costco produced laundry detergent sales data during discovery.

[6] ████████████ Costco members purchased the White Bottle during the relevant period, and bought the Product ████████.  (GC ¶ 34)

C.     **Members Who Buy the White Bottle Do Not Complain About It**

Sun Products has a robust process for receiving consumer feedback, including a call center that allows consumers to contact the company with questions and complaints.  (JD ¶ 4) The vast majority of consumers who contacted the call center about the White Bottle raised issues unrelated to Plaintiff's allegations – *e.g.*, a leaking bottle or clothing they said was stained during laundering.[7]  (JD ¶ 5)

Costco also provides multiple avenues for its members to provide feedback regarding products.  (GC Tr. 180:9-182:4)  Costco's Northeast Buyer testified that he had not received or heard of complaints about the White Bottle coming from New York warehouses.  (GC ¶ 9; GC Tr. 182:6-183:4)

Sun Products reviews reports by consumers involving a person's skin, eye, or body being "exposed" to, or coming into contact with, its products.  (JD ¶ 3)  These reports of "exposure" for the White Bottle have been infinitesimal.  (JD ¶ 9-10)  In New York, Sun Products has received *fewer than 10* exposure reports during the more than three-year period when Costco members have purchased more than ███ units of the White Bottle.  (JD ¶ 9, GC ¶ 33)  This represents ███████████ of New York purchasers.  (JD ¶ 9)  Nationwide, the incidence of such reports during the same period is similarly minute: ██████████ units sold and *fewer than 100* consumers reporting exposures, which is ████████ percent of purchasers nationwide.  (JD ¶ 10)

This very small number of exposure reports speaks to the quality of the White Bottle liquid laundry detergent, which, among other things, underwent patch testing.  ██████████ ████████████████████████████████████████████████████████████████

---

[7] Nationwide, these contacts numbered in the hundreds during a multiyear period when sales of the White Bottle were ██████████ units.  (JD ¶ 5, 10)

███████████████████████████████████████████ (Topper Ex. 7, WS Tr.

46:23-47:9, 48:1-12, 106:3-21)

## IV. THE WHITE BOTTLE IS NOT SOLD AT A PREMIUM PRICE, AND PLAINTIFF DID NOT PAY A PRICE PREMIUM

Plaintiff and other Costco members who purchased the White Bottle did not pay a price premium because of the Recommended Brand Claim. The record is devoid of evidence to support this essential allegation, and undisputed evidence confirms the allegation is wrong.

### A. The Pricing of the White Bottle and Blue Bottle Detergents Shows There Is No Price Premium for the White Bottle

At all relevant times, Costco paid Sun Products the same wholesale price for the White Bottle and the Blue Bottle. (GC ¶ 16) In other words, Sun Products did not charge Costco a price premium for the White Bottle. (GC ¶ 16-17) Costco, in turn, did not charge a premium price for the White Bottle when setting retail prices. (GC ¶ 19) In fact, New York Costco members paid, on average, less for the White Bottle – with the Recommended Brand Claim – than they did for the Blue Bottle – without the claim. (GC ¶ 36) This undisputed fact alone dooms Plaintiff's claims.

1.  Sun Products Sells Costco the White and Blue Bottles for the Same Cost

The amount Costco pays Sun Products is called the "list price" (a/k/a the wholesale price). (GC ¶ 16) The list prices for the White Bottle and Blue Bottle have changed over time, but one thing has remained constant – the list price for both products has been the same. (GC ¶ 16) In other words, Costco did not pay Sun Products a price premium for the White Bottle. (GC ¶ 16-17; MM ¶ 12) For example, in 2016 – the year of Plaintiff's purchase – Costco paid Sun Products ████ for a two-bottle case of the White Bottle and ████ for a two-bottle case of the

Blue Bottle ███████ for a single bottle of each product).[8]  (GC ¶ 17)

       2.   <u>Costco Set the Same Everyday Low Price for the White and Blue Bottles</u>

Costco did not charge members a price premium for the White Bottle when it set the "everyday low price" – the price at which members purchase their products (before any discounts).  (GC ¶ 18)  Costco sets the everyday low price for all products in its Sundries Department (which includes laundry detergent) ████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████ Costco does not set prices based on a product's characteristics or claims on product labels.[9]  (GC ¶ 20) ████████████████████████████████████ ████ Because Costco paid the same list price for the White Bottle and Blue Bottle ████████ ███████████████████, the White Bottle and Blue Bottle have generally had the same everyday low price, apart from minor geographic adjustments.  (GC ¶ 21)

       3.   <u>New York Members Paid Less for the White Bottle Than the Blue Bottle</u>

Costco's sales data confirms that, on average, New York Costco members paid less for the White Bottle than the Blue Bottle.  The average price paid by members for the White Bottle was $15.36.  (GC ¶ 36)  The average price paid for the Blue Bottle was $15.48.  (GC ¶ 36)  Thus, New York members paid 12 cents *less* for the White Bottle, before any additional discounts. (GC ¶ 36)

---

[8] ██████████████████████████████████████████████████

[9] ██████████████████████████████████████████████████

**Average Price of Blue Bottle and White Bottle in New York Warehouses**[10]



Indeed, the average price of the White Bottle has been the same as or less than the average price of the Blue Bottle in New York warehouses except during two periods – for three months in 2014 and two months in 2016.  (GC ¶ 38)  Plaintiff did not purchase the Product during these narrow windows.  Notably, throughout this entire period, the Recommended Brand Claim appeared on the White Bottle – it has nothing to do with price.  (GC ¶ 20; MM ¶ 12)

       4.       <u>Plaintiff Paid Less for the White Bottle Than He Would Have for the Blue Bottle on March 8, 2016</u>

Plaintiff paid $15.79 for the White Bottle he bought on March 8, 2016 at Costco's Nanuet warehouse (*see supra* p. 6).  On that same day in the same warehouse, the Blue Bottle sold for $15.89 – meaning the White Bottle was 10 cents *less than* the Blue Bottle.  (GC ¶ 43)

       5.       <u>Costco Applied Discounts Equally to the White Bottle and Blue Bottle</u>

Costco did not treat the White Bottle differently than the Blue Bottle when offering price discounts to members.  (GC ¶ 23)  One type of discount is called a Multi-Vendor Mailer or "MVM".  (GC ¶ 22)  An MVM applies for a set period of time, and MVM discounts apply automatically – at the time of purchase, there is no need to present a coupon.  (GC ¶ 22)  During the relevant period, the White and Blue Bottles were featured together in approximately fifteen

---

[10] *See* GC ¶ 37, Exs. 8A-B.

MVMs.  (GC ¶ 23, Exs. 6-7)  During MVM periods, $3 to $4 discounts applied to both the White and Blue Bottles in the same amount during the same periods.  (GC ¶ 23, Exs. 6-7)  This was the case even when only one product was pictured in the MVM.  (GC ¶ 23)

Plaintiff did not purchase the White Bottle when an MVM or other discount applied, but ███████ New York purchasers did.  (GC ¶ 41, 45)  Sales of the White and Blue Bottles both ████████████████ when MVMs applied, ████████████████████  (GC ¶ 40)

**B.     Costco's Kirkland Signature® Free & Clear Detergent Shows There Is No Price Premium**

Costco has offered its private label Kirkland Signature® Free & Clear ("Kirkland Free Clear"), which, like the White Bottle, is a liquid detergent that is free of dyes and perfumes and has been a top-selling laundry detergent in New York warehouses.  (GC ¶ 50, 53)  During the relevant period, the White Bottle and Kirkland Free Clear were ████████████████████ ████████████████████ in New York.  (GC ¶ 50)  The White Bottle had a lower retail price than Kirkland Free Clear in New York warehouses:  the average price per load of Kirkland Free Clear was $0.111, while the White Bottle was *less* – $0.097.  (GC ¶ 51-52)

**Average Price per Load of White Bottle and Kirkland Free Clear in New York Warehouses**[11]



---

[11] *See* GC ¶ 51-52, Ex. 8C.

Plaintiff's Complaint does not mention Kirkland Free Clear, and he has not alleged that he considered purchasing Kirkland Free Clear instead of the White Bottle (*see supra* p. 6).  In any event, on the day Plaintiff purchased the White Bottle at the Nanuet, New York warehouse, the White Bottle would have cost less per load than Kirkland Free Clear.  (GC ¶ 43, 57)

### C.    Top-Selling Detergents in New York Costco Warehouses Show There Is No Price Premium

During the relevant period, Costco sold ███████ laundry detergent products at 19 of its New York warehouses.  (GC ¶ 46)  Some products were available for only limited periods and/or at certain New York warehouses, while other products were consistently available throughout New York.  (GC ¶ 47) ████████████████████



### D.    Other Laundry Detergents Purchased by Plaintiff Show He Did Not Pay More for the White Bottle

Plaintiff paid less for the White Bottle than he paid for the other laundry detergents he purchased at Costco during the relevant period.  (GC ¶ 43, 61, 62, 63, Ex. 8D)  Plaintiff purchased Tide Powder High Efficiency ("Tide Powder") eight times and paid $0.132 or $0.133

---

[12] *See* GC ¶ 49, Ex. 8C.

per load.  (GC ¶ 62, Ex. 8D)  Plaintiff paid *less* – $0.0999 per load – for the White Bottle (*see supra.* p. 6).  Plaintiff paid more for two Woolite products (both $0.213 per load) than for the White Bottle.[13]  (GC ¶ 43, 62, Ex. 8D)

The Complaint states that "Plaintiff sought to purchase body washes, shampoos, detergents and other products which do not contain fragrances, dyes, or any skin-irritating chemicals or residue."  (FAC ¶ 19)  But none of the laundry detergents Plaintiff purchased at Costco – other than his single purchase of the White Bottle – is a "free clear" detergent.  (GC ¶ 63, Ex. 8D)  And, at deposition he explained that he purchased certain laundry dryer sheets at Costco because they add scent to his laundry.  (Eidelman Tr. 65:10-66:20)

## V.   PLAINTIFF HAS NOT OFFERED EVIDENCE OF A PRICE PREMIUM

Defendants served interrogatories concerning Plaintiff's allegation that he and others were injured by paying a price premium for the White Bottle.  In response, back in January 2018, Plaintiff referenced his Complaint and said this information would be provided "in the context of Plaintiff's expert report(s)."  (Topper Ex. 3, at p. 12)  On March 20, 2019, Plaintiff told the Court that he needed an extension of the expert deadline because one of his two damages experts was traveling.  (Dkt. 63)  The Court granted the extension.  (Dkt. 65)  Plaintiff then proffered only one damages expert, Mr. Stefan Boedeker, who was retained in late March or early April 2019, mere weeks before his report.  (Topper Ex. 5, Boedeker Tr. 7:15-21, 8:5-10)

Mr. Boedeker testified that the scope of his retention was to outline a methodology for identifying whether there is a price premium, and he admitted that he had not performed an analysis.  (*Id.* at 71:18-72:16, 186:6-18)  He thus offers no opinion as to whether a price premium exists: "I don't have any – any – opinions about the quantity of – of the economic loss

---

[13] Plaintiff also purchased OxiClean Stain Remover Powder – an additive that could be used with a laundry detergent – which had a lower per load cost of $0.048.  (GC ¶ 62, Ex. 8D)

or the price premium, because I haven't done the empirical work". (*Id.* at 69:21-24)

## VI.   **THIS CASE IS RIPE FOR SUMMARY JUDGMENT**

Plaintiff filed his original complaint in May 2016 (Dkt. 1) and his first amended complaint in September 2016 (Dkt. 18).  Defendants moved to dismiss, and, in September 2017, the Court dismissed some of Plaintiff's claims, and declined to dismiss, at the pleading stage, Plaintiff's GBL §§ 349 and 350 claims and his unjust enrichment claim.  (Dkt. 34)

The Court entered a scheduling order in October 2017.  (Dkt. 45)  The Court then granted four extensions to allow for the wide-ranging discovery Plaintiff pursued.  (Dkt. 52, 55, 65, 68)  Defendants produced voluminous documentation and hundreds of thousands of lines of data.  Plaintiff served ten non-party subpoenas; Defendants served one.  Plaintiff took eight depositions, including multiple depositions pursuant to Fed. R. Civ. P. 30(b)(6); Defendants deposed only Plaintiff.  The parties exchanged five expert reports, and participated in five expert depositions.  Magistrate Judge Davison supervised discovery, and the parties participated in fourteen telephonic conferences with Judge Davison between December 2017 and August 2019.

During an August 14, 2019 conference with Judge Davison, the parties confirmed that discovery had been completed.  The parties again told the Court at the September 20, 2019 conference that discovery had been completed.  (Topper Ex. 8, Tr. at 2:13-17; 4:17-5:23)  The Court stayed class certification briefing and set a summary judgment briefing schedule.

## ARGUMENT

Summary judgment is appropriate when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To defeat a

summary judgment motion, "the party with the burden of proof must proffer admissible evidence of each essential element of the claim." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A.*, 137 F. Supp. 2d 502, 510 (S.D.N.Y. 2001). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment" because "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Plaintiff here cannot meet his burden.

## I.   PLAINTIFF CANNOT PROVE A REQUIRED ELEMENT OF HIS N.Y. GBL §§ 349 AND 350 CLAIMS

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state". N.Y. Gen. Bus. Law § 349(a). A plaintiff asserting a claim under Section 349 "must [demonstrate] three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Rephen v. Gen. Motors Corp.*, 2016 WL 4051869, at *4 (S.D.N.Y. July 26, 2016) (internal quotations and citations omitted).[14] The standard for recovery under Section 350 is identical, with the caveat that it is specific to false advertising. *Id.* Plaintiff has the burden of proving his GBL claims. *See, e.g., Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 448 (S.D.N.Y. 2012).

Summary judgment should be granted because Plaintiff cannot show a necessary element of his claims. Plaintiff alleges that he (and other Costco members) were injured by paying a premium or inflated price for the White Bottle because of the Recommended Brand Claim (*see*

---

[14] *See also Koch v. Acker, Merrall & Conduit Co.*, 18 N.Y.3d 940, 941 (2012) (to recover under § 349, a plaintiff must prove "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice").

*supra* p. 6).[15]  But Plaintiff cannot demonstrate that he or any other Costco member paid a higher price because of the Recommended Brand Claim or otherwise.  The undisputed facts developed during extensive discovery confirm this did not happen.[16]

### A.    Actual Injury Is a Required Element of Plaintiff's N.Y. GBL Claims

New York law is clear:  "'Actual injury' is an element of any claim asserted under GBL § 349."[17]  Plaintiff must prove "that the defendant's consumer-oriented deceptive acts or practices resulted in actual injury to [the] plaintiff."  *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676 (S.D.N.Y. 2012).  Thus, in order to "sustain a claim under GBL §§ 349 and 350, Plaintiff must prove that Defendant's deceptive act caused some actual injury."  *Segovia v. Vitamin Shoppe, Inc.*, 2017 WL 6398747, at *4 (S.D.N.Y. Dec. 12, 2017) (Román, J.); *see also Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 63 (S.D.N.Y. 2015) ("§ 349 has three elements . . . (3) the plaintiff must have sustained injury as a result").  Plaintiff does not have this proof.

### B.    Undisputed Facts Show That Plaintiff Did Not Pay a Premium Price

Plaintiff cannot present evidence – let alone "reliable evidence" – that he or anyone else paid a price premium for the White Bottle as a result of the Recommended Brand Claim.  *Weiner v. Snapple Beverage Corp.*, 2011 WL 196930, at *5 (S.D.N.Y. Jan. 21, 2011) ("*Weiner II*") (plaintiff cannot avoid summary judgment without "reliable evidence that [he] paid a premium").  Rather, undisputed evidence adduced throughout years of discovery – including detailed Costco sales data produced at Plaintiff's request – shows the opposite.

First, the Blue Bottle companion product dooms Plaintiff's claims.  The White Bottle and

---

[15] Plaintiff argued in his motion for class certification:  "In this case, Plaintiff alleges that all putative class members suffered an economic injury in having overpaid for the product or paid a price premium for the product in question based on the deceptive labeling claim".  (Class Cert. Mem. at p. 11)

[16] They also show that the underlying factual predicate of the litigation has no merit.  The Recommended Brand Claim is true and not misleading to a reasonable consumer in a material way.

[17] *Marshall v. Hyundai Motor Am.*, 2019 WL 2678023, at *17 (S.D.N.Y. June 14, 2019) (McMahon, C.J.) *citing Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999).

Blue Bottle are both all® PLUS+ liquid laundry detergents sold exclusively at Costco; both have "ADDED WHITENING POWER"; they launched and were announced to Costco's members at the same time; they came in the same size and are for the same number of laundry loads; and when discounts applied, they applied to both products (*see supra* p. 3, 12-13).  The White Bottle is free of dyes and perfumes and has the Recommended Brand Claim – while the Blue Bottle has fragrance and does not have the claim.  The existence of a comparator product like the Blue Bottle presents a unique factual situation not present in other cases.[18]

The pricing of these two products shows, without a doubt, that Plaintiff did not pay a premium for the White Bottle:

- Costco paid the same list price for the White and Blue Bottles (*see supra* p. 10-11).  Thus, Sun Products did not charge Costco a price premium for the White Bottle.[19]

- Costco did not charge its members a premium for the Recommended Brand Claim.  Costco set the same everyday low price for the White Bottle and Blue Bottle (*see supra* p. 11).  Costco did not consider the Recommended Brand Claim in setting the price for the White Bottle (*see supra* p. 12).  And, when Costco offered discounts for the White and Blue Bottles, it treated them the same, offering the same discounts at the same time (*see supra* p. 12-13).

- Neither Plaintiff nor Costco members paid a higher retail price for the White Bottle than for the Blue Bottle.  To the contrary, the White Bottle – with the Recommended Brand Claim – cost *less*.  On the day Plaintiff purchased the White Bottle, he would have paid 10

---

[18] *See, e.g.*, *Ault*, 310 F.R.D. at 68 (failing to establish price premium without "alternate product whose market price could be used as a yardstick to determine what Plaintiff would have paid, but for the alleged misrepresentation"); *Singleton v. Fifth Generation, Inc.*, 2017 WL 5001444, at *21 (N.D.N.Y. Sept. 27, 2017) (failing to show price premium without "adequate basis for comparison" requiring the "sharing [of] most of Tito's other key attributes").

[19] Wholesale prices can be relevant in assessing whether a price premium exists.  *See, e.g.*, *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *10, n.19 (S.D.N.Y. Aug. 5, 2010) (noting "Snapple's wholesale pricing structure" where "Snapple's wholesale list prices" were "uniform" for multiple beverages with and without the allegedly offending label).

cents more ($15.89) for the Blue Bottle (*see supra* p. 12).  And, on average, New York members paid 12 cents *less* for the White Bottle than for the Blue Bottle, before discounts (*see supra* p. 11).

Second, the White Bottle had a lower retail price per load at all relevant times than Costco's private label Kirkland Free Clear, ████████████████████████████ ████████████████████ in New York warehouses (*see supra* p. 13).  Kirkland Free Clear averaged $0.111 per load and the White Bottle averaged *less* at $0.097 (*see supra* p. 13).

Third, the White Bottle had a lower retail price per load than ████████████████ ██████████████████████████████ at New York warehouses during the relevant period (*see supra* p. 14).

Fourth, Plaintiff paid *less* for the White Bottle than he paid for other laundry detergents he purchased at Costco during the relevant period (*see supra* p. 14-15).

The foregoing confirms the White Bottle was not sold at a premium price because of the Recommended Brand Claim.  Indeed, the record here is significantly stronger than in other cases where courts have granted summary judgment on N.Y. GBL claims.  Often, in those cases, a plaintiff fails to offer evidence of price premium.  In *Segovia*, for example, the court granted summary judgment because the record was "utterly devoid of factual support for Plaintiff's proposition" that "he was forced to pay an inflated price for a protein supplement".  2017 WL 6398747, at *4.  The same was true in *Weiner II*, where plaintiffs "failed to present reliable evidence that they paid a premium for Snapple's 'All Natural' label", warranting summary judgment.  2011 WL 196930, at *5.  *See also Boule v. Hutton*, 320 F. Supp. 2d 132, 137 (S.D.N.Y. 2004) (dismissing GBL claims where "Plaintiffs did not present evidence" that purchasers "paid a premium for the artworks because of a false belief in the rarity of authentic

Khidekels").[20]  Here, not only has Plaintiff failed to identify evidence of a premium, but the undisputed facts confirm none existed.

### C.   Plaintiff Has Not Offered Evidence of Price Premium Injury

After years of litigation, voluminous document and written discovery, and numerous depositions, Plaintiff cannot show that he or anyone else paid a premium for the White Bottle.

First, Plaintiff cannot rely on his purchase of the White Bottle to demonstrate injury.  *See, e.g.*, *Marshall*, 2019 WL 2678023, at *19 ("Deception alone cannot constitute 'actual injury' under GBL § 349, as to hold otherwise would render that element of the statute wholly superfluous"); *Small*, 94 N.Y.2d at 56 (rejecting theory that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349."); *Preira*, 885 F. Supp. 2d at 676 ("reject[ing] the notion that a defendant's deception alone – in other words, allegations of pecuniary loss arising solely from the purchase of the defendant's product – may suffice to plead 'actual injury' for a Section 349 claim.").

Second, Plaintiff's proffered expert, Mr. Stefan Boedeker, has no opinion as to whether or not any Costco member paid a price premium when purchasing the White Bottle (*see supra* p. 15-16).  This is despite Plaintiff alleging more than three years ago that he was injured by paying a premium price, stating almost two years ago that an expert would support this allegation, and requesting (and receiving) an extension of the expert disclosure deadline to allow his damages

---

[20] *See also In re Whole Foods Market Grp., Inc. Overcharging Litig.*, 397 F. Supp. 3d 406, 429 (S.D.N.Y. 2019) (granting summary judgment where plaintiff did "not come forward with non-speculative evidence" that the items he purchased were overpriced); *Hollander v. Metro. Transp. Auth.*, 2015 WL 4077193, at *6 (Sup. Ct. N.Y. Cty. June 25, 2015) (even if advertised duration of monthly and weekly MetroCards purchased by plaintiff were deceptive, the cards were discounted compared to pay-per-ride cards and plaintiff therefore suffered no injury).

experts to complete their work (*see supra* p. 15).[21]

Plaintiff cannot avoid summary judgment by relying on a theoretical damages model that hypothetically might (or might not) find that an unspecified price premium exists.  *See, e.g., Weiner II*, 2011 WL 196930, at *3 ("While the difficulty that the plaintiffs face in showing injury is great, it is nonetheless their burden to make such a showing, and they have failed to offer sufficient evidence to permit a jury to render an award in their favor.").  Conjecture and speculation that the Recommended Brand Claim caused purchasers of the White Bottle to pay a price premium – especially in the face of extensive real-world evidence to the contrary – cannot overcome summary judgment.  *See, e.g., Segovia*, 2017 WL 6398747, at *4 ("mere speculation or conjecture as to the true nature of the facts" cannot overcome summary judgment).[22]

## II.        PLAINTIFF LACKS EVIDENCE TO PROVE UNJUST ENRICHMENT

In opposing dismissal at the outset of the case, Plaintiff explained that his unjust enrichment claim against Costco "is based on different allegations of fact – Costco's unfair enrichment through consumers' mistaken purchases of a deceptively advertised product carried only by Costco as opposed to Sun Products' acts of deceptive labeling".  (Dkt. 28 at p. 22-23)  Plaintiff has no evidence supporting this claim, and summary judgment is warranted.

An unjust enrichment claim requires "(1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509 (2d Cir. 2009) (citation omitted).  Plaintiff "must show that the benefits that [he] received 'were less than what [he] bargained for.'"  *Weiner II*, 2011 WL

---

[21] Mr. Boedeker's opinions violate the requirements for expert opinions set by the Federal Rules of Civil Procedure and *Daubert* and its progeny.  If necessary, Defendants will make an application to exclude his testimony.  Given his admission that he does not have an opinion as to the existence of a price premium (*see supra* p. 15-16), the Court need not wrestle with these evidentiary issues to grant summary judgment.

[22] This is not a case "when the existence of damage is known but its extent is opaque".  *Cf. Ebin v. Kangadis Food Inc.*, 2014 WL 737878, *2 (S.D.N.Y. 2014).  All evidence points to no injury or damages.

196930, at *5 (quoting *Vigiletti v. Sears, Roebuck & Co.*, 42 A.D.3d 497, 498 (2d Dep't 2007)).

Moreover, "[t]he essential inquiry in any action for unjust enrichment . . . is whether it is against

equity and good conscience to permit the defendant to retain what is sought to be recovered."

*Tropical Sails Corp. v. Yext, Inc.*, 2017 WL 1048086, at *15 (S.D.N.Y. Mar. 3, 2017) (citations

omitted).  Without facts demonstrating an "equitable entitlement" to relief, summary judgment

should be granted.  *DeBlasio v. Merrill Lynch & Co., Inc.*, 2009 WL 2242605, at *40 (S.D.N.Y.

July 27, 2009) (dismissal where plaintiffs "have not identified circumstances suggesting that

equitable considerations entitle them to a share of Defendants' profits").

 Because Plaintiff lacks evidence demonstrating that he or any Costco member paid a

higher price for the White Bottle because of the Recommended Brand Claim, summary judgment

should be granted.  Plaintiff cannot prove (and does not even allege) that he paid for something

other than what he purchased.  His focus instead is that he paid more for the White Bottle as a

result of the Recommended Brand Claim (*see supra* p. 6).

 The record confirms Plaintiff did not pay more for the White Bottle (*see supra* p. 12).

This dooms Plaintiff's claim.  *See, e.g.*, *Weiner II*, 2011 WL 196930, at *5 (granting summary

judgment where "plaintiffs have not shown that they paid a price premium for Snapple beverages

as a result of the 'All Natural' labeling, much less the amount of any such premium"); *Whole

Foods*, 397 F. Supp. 3d at 420 (granting summary judgment where plaintiff failed to "establish

that a benefit has been unfairly conferred on a defendant *to the detriment of the plaintiff*").[23]

 Summary judgment on Plaintiff's unjust enrichment claim is particularly appropriate

because the record is devoid of evidence that equitable considerations entitle Plaintiff to relief

---

[23] Plaintiff bases his unjust enrichment claim on the theory that "he paid a premium or inflated price
directly to Costco for [the Product], rather than purchasing a cheaper alternative elsewhere due to
Defendant Sun Product's deceptive and misleading label".  (Dkt. 34 at p. 14)  Plaintiff failed to conduct
third-party discovery to test, let alone, support his claim about any detergents available elsewhere.

against Costco.  <u>First</u>, Costco did not price the White Bottle differently because of the Recommended Brand Claim (*see supra* p. 12).  <u>Second</u>, Costco will refund the purchase price of a product if a member is dissatisfied (*see supra* p. 8).  Yet Plaintiff did not seek to return the White Bottle or complain about his purchase (*see supra* p. 7).  <u>Third</u>, Plaintiff cannot offer evidence that could even suggest that Costco had reason to believe that members were unhappy with the White Bottle.  To the contrary, it is undisputed that ▇▇▇▇ percent of the Costco members who purchased the White Bottle did so ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ of New York members returned the Product, and that members did not complain about the White Bottle (*see supra* p. 8-10).

In short, Costco provided its New York members with a product they liked, trusted, and purchased again and again, and which cost *less* per load than other laundry detergents (*see supra* p. 8, 14).  This is not grounds for an unjust enrichment claim.  The Court should grant Defendant Costco summary judgment.  *See, e.g.*, *Marini v. Adamo*, 12 F. Supp. 3d 549, 556 (E.D.N.Y. 2014) ("The 'essential inquiry' . . . is one of 'equity and good conscience,' which involves consideration of whether 'there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent.'").

## III.   **PLAINTIFF DOES NOT HAVE STANDING TO SEEK INJUNCTIVE RELIEF**

Even if Plaintiff's claims could go forward – and they should not – the Court should issue summary judgment as to Plaintiff's prayer for injunctive relief.  A plaintiff "lack[s] standing to pursue injunctive relief [if he is] unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)).  A plaintiff like Mr. Eidelman "fails to 'establish a likelihood of [such] future . . . harm'" if "'he has not shown that he is likely to be subjected to further [injurious] sales' of that sort because he 'fail[s] to allege that he intends to [purchase the

offending product] in the future.'"  *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d

Cir. 2018) (alterations in original).  Plaintiff testified that he would not purchase the White Bottle

again and confirmed he has not done so.  (Eidelman Tr. 226:21-227:9, 58:11-18)  Plaintiff's

prayer for injunctive relief should be dismissed.  *See, e.g.*, *Quiroz v. Beaverton Foods, Inc.*, 2019

WL 1473088, at *3-4 (E.D.N.Y. Mar. 31, 2019) (dismissing for lack of standing because

"Plaintiff does not allege that she will buy the Product again. . . .").

## **CONCLUSION**

The undisputed evidence establishes that no consumer paid a price premium for the

White Bottle.  The absence of a price premium is fatal to Plaintiff's claims.  Defendants are

entitled to summary judgment as a matter of law on all claims.

Dated:  November 22, 2019                    Respectfully submitted,
      New York, New York

                                        MANATT, PHELPS & PHILLIPS, LLP


By:   /s/ Prana A. Topper
       Prana A. Topper
       Ethan D. Roman
       7 Times Square
       New York, NY  10036
       Telephone:  (212) 790-4500
       Facsimile:  (212) 790-4545
       ptopper@manatt.com
       edroman@manatt.com

       Brad W. Seiling (pro hac vice)
       11355 W. Olympic Blvd
       Los Angeles, CA 90064
       Telephone:  (310) 312-4000
       Facsimile:  (310) 312-4224
       bseiling@manatt.com

       *Attorneys for Defendants*
       *The Sun Products Corporation and*
       *Costco Wholesale Corporation*